Hearing Date:  February 14, 2017<br>
Hearing Time:  1:30 P.M.

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400
Facsimile: (212) 753-0396
Nathan Schwed

*Attorneys for Citibank, N.A.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>ROSELLI MOVING & STORAGE CORP.<br>f/k/a ROSELLI MOVING,<br><br><br><br>Debtor | Chapter 7<br><br>Case No. 12-76139 (AST) |

## OPPOSITION OF CITIBANK, N.A. TO FINAL REPORT

Citibank, N.A. ("**Citibank**"), by its attorneys Zeichner Ellman & Krause LLP, as and for its objection to the Final Report of Trustee Allan B. Mendelsohn (the "**Trustee**"), represents as follows:

### BACKGROUND

1. Citibank began extending credit to Roselli Moving & Storage Corp. (the "Debtor") in 2004. Annexed hereto as **Exhibit A** are copies of Credit Agreements and related documents executed by the Debtor in 2004 and 2005. Pursuant thereto, the Debtor granted Citibank a security interest in all of the Debtor's personal

property. Citibank perfected its security interest in the Debtor's assets by the filing of UCC-1 financing statements in 2004 and 2005. Copies of the UCC-1 filings are annexed hereto as **Exhibit B**. In 2007, Citibank discovered that the Debtor's principal, Robert Villano ("**Villano**"), had transferred his equity interest in the Debtor to his wife, Roxanne Villano a/k/a Roxanne Nelson ("**Nelson**"). Citibank notified the Debtor that it intended to terminate the loan facility and demand payment of the outstanding balance. Thereafter, the Debtor, by Nelson, executed new loan agreements to extend the existing credit and Nelson signed a personal guaranty. Copies of the documents executed in 2007 are annexed hereto as **Exhibit C**.

2. At the time the Debtor filed its bankruptcy petition, Citibank held a validly perfected security interest in **all** of the Debtor's assets and filed a secured claim therefor. A copy of Citibank's proof of claim is annexed hereto as **Exhibit D**.

3. Examinations conducted by the Trustee revealed that in January 2012, subsequent to the Debtor's bankruptcy filing, Nelson had formed a new company, Moving Storage Center ("**MSC**"), which began to operate in the Debtor's business premises and received all of the Debtor's assets, including its accounts receivable. Villano testified at the 341 meeting of creditors that the Debtor received no consideration for the transfer of its assets to MSC. The Trustee demanded that MSC cease operating and return all of the Debtor's assets that were fraudulently transferred to MSC, and threatened to sue Nelson, Villano and their entities if they did not do so. Negotiations resulted in a stipulation of settlement (the "**Stipulation**") between the

2

Trustee and Nelson, Villano and several of their entities, pursuant to which Nelson, Villano and their entities agreed to pay to the Trustee the sum of $125,000 via a $75,000 down payment followed by 18 monthly installments. A copy of the Stipulation is annexed hereto as **Exhibit E**.

4. The Trustee filed a motion (the "**9019 Motion**") for approval of the Stipulation, pursuant to Bankruptcy Rule 9019. A copy of the 9019 Motion is annexed hereto as **Exhibit F**. The Stipulation and the 9019 Motion each recite that the Trustee was settling his claim to recover the Debtor's assets that were fraudulently transferred by Nelson and Villano to SMC. The 9019 Motion was approved and the Court 'so ordered" the Stipulation on August 23, 2013.

5. In November 2014, the Trustee's counsel requested that Citibank forward copies of the loan documents and UCC-1 filings supporting its secured claim. They were forwarded to the Trustee's counsel in early 2015. Citibank received no further communication from the Trustee until it received the Trustee's Final Report.

6. The Final Report reflects total receipts by the Trustee of $126,444, which appears to include the $125,000 settlement payment and interest earned thereon during the more than three years since the Stipulation was approved. Thus, it appears that the Trustee did not administer or receive any assets other than the claim for a fraudulent conveyance of the Debtor's assets (that constituted Citibank's collateral) and the settlement proceeds he received as a result of that claim. In his Final Report, the Trustee proposes to pay a total of $49,678.86 for the fees and expenses of

the Trustee and his professionals, and to distribute $892.38 to priority creditors and $70,796.09 to unsecured creditors, with no distribution to Citibank.

**The Settlement Proceeds Are Citibank's Collateral**

7.  It is undisputed that Citibank's lien extends to "the proceeds and products" of its collateral. Exhibits A-C. Similarly, it is undisputed that the assets which were fraudulently transferred to MSC were Citibank's collateral and that the Stipulation settled the Trustee's claim for the return of that collateral. Accordingly, the settlement proceeds constitute Citibank's collateral and must be paid to Citibank. In re Milton Abeles, LLC, 2013 Bankr. LEXIS 3932 * (Bankr. E.D.N.Y. September 20, 2013) ("the secured creditor with a prepetition, perfected security interest in the debtor's property and the 'proceeds, product, offspring, or profits of such property' retains that prior perfected security interest after the bankruptcy case is filed" and is entitled to the proceeds of the trustee's recovery of a fraudulent conveyance of the collateral); In re Figearo, 79 Bankr. 914 (Bankr. D. Nev. 1987) (citing cases) (if a secured creditor's lien extends to transferred property, the trustee's recovery on a fraudulent conveyance/preference claim is subject to the creditor's security interest and the secured creditor is entitled to the proceeds); In re Ellingsen MacLean Oil Co., 98 B.R. 284 (Bkrtcy W.D. Mich 1989) ("secured creditor's interest in proceeds from secured collateral continues postpetition" and "attaches to preference proceeds").

8.  In light of the foregoing, the proceeds of the Trustee's settlement are subject to Citibank's security interest and Citibank is entitled thereto. Citibank

concedes that the Trustee and his professionals should be entitled to recover fees and expenses directly associated with achieving the settlement. Accordingly, Citibank requests that the Court determine that amount and direct the Trustee to deliver the balance of the estate's funds to Citibank.

WHEREFORE, Citibank respectfully requests that the Court (i) decline to approve the Final Report, (ii) determine and award the appropriate amount of fees to be paid to the Trustee and his professionals, (iii) direct the Trustee to distribute the balance of the estate's funds (after distribution of such fees) to Citibank and (iv) grant such other further and different relief as is just and proper.

Dated:  New York, New York
        February 6, 2017

                                              ZEICHNER ELLMAN & KRAUSE LLP

                                              By:/s/ *Nathan Schwed*
                                                 NATHAN SCHWED
                                            Attorneys for *Citibank, N.A.*
                                            1211 Avenue of the Americas
                                            New York, New York 10036
                                            Telephone: (212) 223-0400